**FILED**
**CLERK**

**4/20/2026**

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------- X

CRISTIAN JOEL MARENCO,

                    *Plaintiff*,

               -against-

ALPHA WASTE SOLUTIONS, LLC, and
GEOGRI MARTE,

                    *Defendants*.

------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
25-CV-00658 (NJC) (JMW)

**A P P E A R A N C E S:**

    Keith E. Williams, Esq.
    Victoria Spagnolo
    Justin M. Reilly
    **The NHG Law Group, P.C.**
    4242 Merrick Road
    Massapequa, NY 11758
    *Attorneys for Plaintiff*

    *No Appearance for Defendants*

**WICKS,** Magistrate Judge:

Plaintiff Christian Joel Marenco ("Plaintiff") commenced this action against Alpha Waste

Solutions, LLC ("Alpha") and Georgi Marte ("Marte") (collectively "Defendants") alleging that

Defendants failed to pay his minimum and overtime wages as well as his spread of hours pay,

and further failed to provide accurate wage statements and a wage notice when he was hired in

violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and various sections

of the New York Labor Law ("NYLL"). (*See generally* ECF No. 1.)

Before the Court on referral from the Hon. Nusrat J. Choudhury is Plaintiff's motion for

default judgment and an assessment of damages against Defendants. (ECF No. 11.) For the

1

reasons stated herein, the undersigned recommends that the District Judge **GRANT** Plaintiff's motion (ECF No. 11) and award the damages as set forth below.

### FACTUAL BACKGROUND

The following allegations are drawn from the Complaint. (ECF No. 1.) Defendants own and operate a cleaning company, Alpha, located at 10 Windsor Court, Mineola, New York. (*Id.* at ¶¶ 1, 11.) Plaintiff alleges that Alpha had "employees engaged in commerce or in the production of goods and services for commerce," had employees who "handle, sell, or otherwise work on goods or materials" that had moved in or were produced for interstate commerce, and had "an annual gross volume of sales of not less than $500,000" for each applicable year of Plaintiff's employment. (*Id.* at ¶¶ 12–14.)

Defendant Marte was and continues to be a shareholder, owner, officer, director, and/or managing agent of Alpha who "participated in running the daily operations of Alpha Waste" including in the "management and supervision of Plaintiff and his work" at Alpha. (*Id.* at ¶¶ 17-19.) Marte supervised Plaintiff's job duties and responsibilities. (*Id.* at ¶ 25.) Further, Marte "was responsible for ensuring that Plaintiff was paid properly." (*Id.* at ¶ 31.) Specifically, Marte participated in the decision to hire and fire Plaintiff, Plaintiff's job duties and responsibilities, the manner in which Plaintiff would be paid, the hourly rate Plaintiff was paid, the compensation Plaintiff was paid, the schedule Plaintiff worked, and the number of hours Plaintiff worked each week. (*Id.* at ¶¶ 22-24, 26-30.)

Plaintiff, a New York resident, was employed by Defendants as a cleaner from March 21, 2018 to December 31, 2018, and from April 25, 2019 to November 27, 2024. (*Id.* at ¶¶ 2, 38.) Plaintiff alleges that he regularly worked six days per week, Monday through Saturday, typically from 6:30 p.m. to 8:00 a.m., and twice per week his shift extended until 2:00 p.m., resulting in

Case 2:25-cv-00658-NJC-JMW    Document 14    Filed 04/20/26    Page 3 of 43 PageID #: 113

approximately 93 hours worked per week. (*Id.* at ¶¶ 40–44.) During his employment, Plaintiff avers that Defendants paid Plaintiff a daily rate regardless of the number of hours worked. (*Id.* at ¶ 44.) Particularly, from 2018 to 2021, Defendants paid Plaintiff $150.00 per day, from 2021 to October 2023, Defendants paid Plaintiff $180.00 per day, and from October 2023 to November 27, 2024, Defendants paid Plaintiff $230.00 per day. (*Id.* at ¶¶ 45-47.) Plaintiff avers that Defendants failed to pay Plaintiff overtime compensation at one and one-half times his regular rate of pay for hours worked in excess of forty per week and failed to pay Plaintiff minimum wage. (*Id.* at ¶¶ 48, 49.) Moreover, Plaintiff maintains that Defendants never paid Plaintiff spread of hours compensation when working in excess of ten hours per day, nor did Defendants provide "complete and accurate wage notice" to Plaintiff when he was hired. (*Id.* at ¶¶ 50, 51.)

Accordingly, Plaintiff asserts causes of action for failure to pay overtime wages under the FLSA and NYLL, failure to pay minimum wages under the NYLL, failure to provide wage notices under the NYLL, failure to provide wage statements under the NYLL, and failure to pay spread of hours compensation under the NYLL. (*See generally id.*) Plaintiff also asserts in his first and second claims that no overtime exemptions apply to him.[1] (*Id.* at ¶¶ 71, 79.)

As for damages, Plaintiff seeks: (i) compensatory damages, including all unpaid wages; (ii) liquidated damages under the NYLL or, in the alternative, the FLSA; (iii) statutory penalties for Defendants' alleged violations of NYLL § 195; (iv) prejudgment interest on unpaid wages; (v) costs and attorneys' fees[2]; (vi) an automatic fifteen percent (15%) increase for any damages

---

[1] Section 13 of the FLSA (29 U.S.C. §213) exempts certain categories of employees from overtime. 12 NYCRR § 142-2.2 requires that the exemptions listed in section 13 of the FLSA be followed.

[2] In his motion for default judgment, counsel for Plaintiff notes in that Plaintiff is "not seeking an award of attorneys' fees and costs but reserve all of their right to do so if Defendant appears and defends this lawsuit." (ECF No. 11-2, Williams Decl. at ¶ 26.)

3

not paid within ninety (90) days following judgment pursuant to the NYLL; and (vii) such other and further relief as the Court deems just and equitable. (*Id.* at pp. 11–12.)

## PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on February 5, 2025 (ECF No. 1), and served Defendant Alpha with the Summons and Complaint on February 14, 2025 (ECF No. 7) and Defendant Marte on March 1, 2025. (ECF No. 6.) Their answers were due, respectively, on March 7, 2025 and March 24, 2025. (ECF Nos. 6, 7.) Upon receiving no response from Defendants, the undersigned noted that Defendants answers were due by March 7, 2025 and March 24, 2025 and directed Plaintiff to either file a request for a certificate of default or voluntarily dismiss the case by November 17, 2025. (Electronic Order dated October 16, 2025.) Plaintiff requested a certificate of default on November 5, 2025. (ECF No. 8.) Shortly thereafter, the Clerk entered default against Defendants on November 7, 2025. (ECF No. 10.) The undersigned then directed Plaintiff to either file a motion for default judgment in accordance with Judge Choudhury's Individual Rules for Civil and Criminal Cases or voluntarily dismiss the case. (Electronic Order dated November 8, 2025.) Plaintiff filed his motion for default judgment on November 11, 2025 (ECF No. 11) which was referred to the undersigned for a Report and Recommendation the following day by Judge Choudhury. (Electronic Order dated November 12, 2025.) Though afforded an opportunity to do so, Defendants did not oppose Plaintiff's motion. (*See* Electronic Order dated November 14, 2025.) To date, Defendants have not appeared in this action.

## THE LEGAL FRAMEWORK

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55. First, as here, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action. *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Local R. 55.1(b) and 55.2. After

the clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2. The decision to grant a motion for default is left to the discretion of the district court. *United States v. Dougherty*, No. 15-cv-554 (ADS) (AKT), 2016 WL 5112063, at *3 (E.D.N.Y. Aug. 1, 2016), *report and recommendation adopted*, 2016 WL 4705549 (E.D.N.Y. Sep. 7, 2016). As the Clerk has already entered default against Defendants (ECF No. 11-10), the Court is primarily concerned with Plaintiff's compliance with E.D.N.Y. Local R. 55.2.

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). However, a plaintiff must still demonstrate that the allegations set forth in the Complaint state valid claims. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("[A] district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted). The Court, thus, must ensure: (i) Plaintiff satisfied all required procedural steps in moving for default judgment, *see* Loc. Civ. R. 55.2; and (ii) Plaintiff's allegations, when accepted as true, establish liability as a matter of law. *See Finkel*, 577 F.3d at 84; and (iii)

## **DISCUSSION**

### I.    **Procedural Compliance**

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion. E.D.N.Y. Local R. 7.1(a)(1) - (3). Local Civil Rule 55.2 requires that a party moving for default judgment append to its application an affidavit or declaration

demonstrating that (A) the Clerk has entered default against the Defendant, (B) the movant has complied with the SCRA, and (C) that the defendant is not a minor or incompetent person, as well as all papers required by E.D.N.Y. Local R. 7.1 (*supra*), and a proposed judgment and certificate of service that all documents in connection with the motion for default judgment has been personally served on or mailed to the defendant's residence or business address. E.D.N.Y. Local R. 55.2(a).

The Local Rules also require that the moving party "must file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs." E.D.N.Y. Local R. 55.2(c). With respect to the non-military affidavit, before a default judgment can be entered for the plaintiff, the SCRA commands that the Court "require the plaintiff to file with the court an affidavit ... stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. App. § 521; *ADI Glob. Distribution v. Green*, No. 20-CV-03869 (AMD) (JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023).

The SCRA requirement is inapplicable to Alpha, a corporation. (*See* ECF No. 11-2, Williams Decl. at ¶ 4); *see also Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CV-5624 (ARR) (VMS), 2020 WL 6370148, at *9 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (only applying the SCRA to the individual defendants). Conversely, with respect to Marte, Plaintiff submits an exhibit of the SCRA Department of Defense Manpower Data Center stating that Marte was not an active military member, and an affidavit reitterating the same. (*See* ECF No. 11-6, *see also* ECF No.

6

11-2, Williams Decl. at ¶ 5.) These efforts comply with the SCRA. *See McLaugulin v. Onanafe Management Solutions LLC*, No, 22-CV-6792 (PKC) (MMH), 2024 WL 4184485, at *6 (E.D.N.Y. Sept. 14, 2024) (noting the SCRA requirement is complied with where plaintiff files a declaration stating that an individual defaulting defendant was not a member of the military after performing a search of the Department of Defense database).

Additionally, Plaintiff's motion further complies with Local Rule 7.1 and Local Rule 55.2(a)(2) because it includes (1) a notice of motion (ECF No. 11); (2) a memorandum of law (ECF No. 11-1); (3) affidavits and exhibits to support Plaintiffs contentions (ECF Nos. 11-2, 11-7, 11-9); and (4) a proposed order detailing the proposed judgment (ECF No. 11-11). The motion further complies with Local Rule 55, as Plaintiffs properly attached and submitted a declaration affirming that the Certificate of Default was entered by the Court on November 7, 2025 (ECF No. 11-10) and a declaration that Defendants are not infants, in the military, or incompetent persons. (ECF No. 11-2, Williams Decl. at ¶¶ 4-5.) Plaintiff has also filed an affidavit of service of the requisite documents on Defendants via first class mail. (ECF No. 12).

Finally, Plaintiff complied in all respects with Local Rule 55.2(c) by filing a statement of damages demonstrating the proposed damages and basis for the element of damages. (ECF No. 11-8); *see* E.D.N.Y. Local R. 55.2(c).  As to Plaintiff's damages, Plaintiff submits a breakdown of his individual FLSA/NYLL overtime damages, liquidated damages, statutory damages, and interest. (ECF No 11-8.) Accordingly, the Court finds that Plaintiff's Motion for Default Judgment is procedurally proper and now turns to the merits.

## II.    <u>Applying the Default Factors</u>

In evaluating whether to grant a default judgment, courts consider: (i) whether the defendant's default is willful; (ii) whether the defendant has a meritorious defense to plaintiff's

claims; and (iii) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied. *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317 (ADS)(AKT), 2013 WL 4042357, at \*2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013). Consideration of these three factors leads to a recommendation that an entry of default judgment is appropriate where, as here, Defendants have wholly failed to appear and present any defense, and Plaintiff is left with no further steps to take to secure relief. *ADI Glob. Distribution*, 2023 WL 3355049, at \*4.

### III.    <u>Jurisdiction</u>

### a.  **Personal Jurisdiction**

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  Since a judgment rendered against a defendant over whom the Court does not have personal jurisdiction can be vacated pursuant to Rule 60(b)(4), it "preserves judicial economy for the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment." *Foshan Shunde Xinrunlian Textile Co. v. Asia 153 Ltd.*, No. 14-cv-4697 (DLI) (SMG), 2017 WL 696025, at \*2 (E.D.N.Y. Jan. 30, 2017). Here, "a *sua sponte* assessment of personal jurisdiction is appropriate" because Defendants have failed to appear in this action. *Id*.

For a court to exercise personal jurisdiction: (i) a plaintiff must complete proper service of process, (ii) there must be a statutory basis for personal jurisdiction that renders such service of process effective, and (iii) the exercise of personal jurisdiction must comport with

constitutional due process principles. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673. F.3d 50, 60–61 (2d Cir. 2012).

Rule 4(c) requires that a summons must be served with a copy of the Complaint and by a person who is at least 18 years old and not a party to the case. *See* Fed. R. Civ. P. 4(c). Additionally, Rule 4(e)(1) permits service on individuals to be made "pursuant to the law of the state in which the district court is located." Under New York law, personal service may be effectuated on an individual:

> [W]here service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" ….

N.Y. C.P.L.R. § 308(4).

Here, Plaintiff served Defendant Marte by affixing a true copy of the Summons to the door of Marte's dwelling and by mailing the Summons in an envelope labelled "Personal and Confidential" by mail to Defendant's last known address—390 Mooney Pond Road, Farmingville, New York 11738. (*See* ECF No. 6.) Before doing so, however, Plaintiff attempted to personally serve Marte at this residential address on three separate weekdays on different weeks at differing times of day and was met with no answer and no information regarding Defendant Marte's whereabouts. (*See id.*) These service attempts amount to "due diligence" under New York law, thereby permitting service under § 308(4). *See Gross Foundation, Inc. v. Goldner*, 12-CV-1496 (ILG) (RER), 2012 WL 6021441, at *4 (E.D.N.Y. Dec. 4, 2012) ("New York courts have held that three attempts at personal service on the defendant at his residence when the defendant could reasonably be expected to be there, on different days of the week and

at different times, constitutes due diligence"); *Weifang Xinli Plastic Products v. JBM Trading Inc.*, No. 11-CV-2710 (WFK) (LB), 2014 WL 4244258, at *3 (E.D.N.Y. Aug. 26, 2014) (finding that in order to demonstrate "due diligence" before allowing service under § 308(4), "cases have required approximately three attempts at service, optimally on non-consecutive days") (collecting New York State cases). Accordingly, service upon Defendant Marte was proper under New York law.

Furthermore, Rule 4(h) provides that a domestic or foreign corporation may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." *See* Fed. R. Civ. P. 4(h)(1)(B); *Hartford Fire Ins. Co. v. Queens Cnty. Carting, Inc.*, No. 20-CV-01844 (NSR), 2022 WL 254367, at *2 (S.D.N.Y. Jan. 27, 2022) (quoting Fed. R. Civ. P. 4(h)(1)(A)). Under New York law, service on a corporation may be made by "personally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee" and "shall be complete when the secretary of state is so served." N.Y. Bus. Corp. Law § 306(b)(1).

Here, the Affidavit of Service states that Plaintiff served Defendant Alpha through the New York Secretary of State by delivering two copies with Authorized Agent Nancy Dougherty. (ECF No. 7.) Accordingly, service upon Defendant was proper. *See Bonilla v. Avery Cuisine LLC*, No. 23-cv-08320-NJC-JMW, 2025 WL 745906, at *4 (E.D.N.Y. Jan. 15, 2025) (concluding service was proper upon the corporate defendant where defendant "was served through the New York Secretary of State by delivering two copies with Authorized Agent Nancy Dougherty"), *report and recommendation adopted*, 2025 WL 559650 (E.D.N.Y. Feb. 20, 2025).

"Personal jurisdiction in a diversity case is determined by the law of the state in which the district court sits." *SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 547 (S.D.N.Y. 2003) (citing *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir.1999)). The same goes for a case arising under federal question jurisdiction unless the applicable federal statute contemplates nationwide service of process, which, as relevant here, the FLSA does not. *Bonilla*, 2025 WL 745906, at *4 (citing *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 277 (S.D.N.Y. 2019)). Thus, the Court first looks to New York law for the purpose of determining personal jurisdiction over Defendants in New York. Then, the Court evaluates whether the "exercise of jurisdiction under state law satisfies federal due process requirements of 'fair play and substantial justice.'" *Mortg. Funding Corp. v. Boyer Lake Pointe, LLC*, 379 F. Supp. 2d 282, 286 (E.D.N.Y. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Under New York law, there are two routes for a court to exercise personal jurisdiction. The Court considers each in turn below:

### i.   General Jurisdiction

The Court considers this issue in light of the Supreme Court's pronouncements in *Daimler* and *Goodyear*, where the Court noted that other than in "exceptional cases" the exercise of general jurisdiction is confined to a corporation's "place of incorporation and principal place of business." *See Aybar v. Aybar*, 177 N.E.3d 1257, 1265 (2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014)); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Here, Alpha is a New York LLC, with its place of business in Mineola, New York. (ECF No. 1 at ¶¶ 10-11.) Thus, the Court has general jurisdiction over Alpha.

Conversely, as for Marte, though Plaintiff alleges Defendant Marte is an individual "residing" in the State of New York (ECF No. 1 at ¶ 9), "residency alone is insufficient to prove

11

a person's domicile." *Financial Services Vehicle Trust v. Samaroo*, No. 24-cv-4512 (FB) (JMW), 2025 WL 1446908, at *5 (E.D.N.Y. Apr. 21, 2025), *report and recommendation adopted*, 2025 WL 1446037 (E.D.N.Y. Apr. 21, 2025); *see Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another.") (internal citations omitted); *see also Molokotos-Liederman v. Molokotos*, No. 23 Civ. 1654 (VM), 2023 WL 5977655, at *6 (S.D.N.Y. Sept. 14, 2023) ("[A]s courts have remarked, physical residence alone is not sufficient to ascertain a party's domicile for the purposes of establishing ... subject matter jurisdiction.").

Moreover, though service was properly effectuated in accordance with N.Y. C.P.L.R. § 308(4), this does not confer general jurisdiction over a defendant because Defendant Marte was not "personally served" while in New York. *See Owens v. Ronemus*, No. 23 Civ. 3036 (PGG), 2024 WL 3105605, at *4 (S.D.N.Y. June 24, 2024) (emphasizing that a defendant must be served while physically present within New York to confer general jurisdiction over him and noting the extreme absence of case law supporting a finding of general jurisdiction absent a showing of personal service). Additionally, the record is devoid of any indication that Marte consented to jurisdiction in New York. Accordingly, because the Court does not have general jurisdiction over Defendant Marte, the Court now considers whether there is specific jurisdiction under New York's long-arm statute.[3]

---

[3] Having found general jurisdiction is present over Defendant Alpha, a finding of specific jurisdiction is not required. *See Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 397 n.1 (S.D.N.Y. 2004) ("Where general jurisdiction is asserted, the claim need not arise out of the defendant's contacts with the forum state ….") Indeed, specific jurisdiction is required over non-residents, unlike here where Alpha is domiciled in New York. *See In re Stillwater Cap. Partners Inc. Litig.*, 851 F. Supp. 2d 556, 567 (S.D.N.Y. 2012) (stating that a court may exercise specific jurisdiction over a non-domiciliary if certain requirements are met).

**ii. Specific Jurisdiction**

Pursuant to New York's long-arm statute, C.P.L.R. 302(a), a court "may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state," as long as the Plaintiff's "cause of action aris[es] from" that "transact[ion]." This is known as specific jurisdiction and sometimes referred to as long-arm jurisdiction.  To exercise specific jurisdiction through New York's long-arm statute, "two requirements must be met: (1) The defendant must have transacted business within the state[4]; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citation omitted). "Section 302(a) also requires that the claims asserted 'aris[e] from any of the acts' that provide the basis for exercising jurisdiction." *Sea Tow Servs. Int'l, Inc. v. Pontin.*, 472 F. Supp. 2d 349, 360 (E.D.N.Y. 2007) (quoting CPLR § 302(a)). "[A] claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon.'" *Id.* (quoting *Sole Resort*, 450 F.3d at 103).

Here, Defendant Marte is a resident of New York who works at a cleaning company located in New York where he serves as the "shareholder, owner, officer, director, and/or

---

[4] "To determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006). Courts consider the following factors:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward, Inc.*, 362 F.3d 17 at 22 (quotations omitted) (internal citations omitted).

13

managing agent of Alpha Waste." (ECF No. 1 at ¶¶ 1, 9, 17.) At this cleaning company, Marte controlled Plaintiff's salary, hours worked, scheduled pay periods, and policies related to Plaintiff's employment, all of which form the entire basis for the alleged violations of the FLSA and NYLL. (*See id.* at ¶¶ 19-31.)

The exercise of long arm jurisdiction over a defendant by a New York court must also satisfy constitutional due process standards. *Licci*, 673 F.3d at 60. To satisfy the requirements of due process, the defendant's activities in New York must constitute "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum States, thus invoking the benefits and the protection of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (cleaned up). This involves a two-fold inquiry: (1) "minimum contacts," and (2) "reasonableness." *Sea Tow Servs. Int'l*, 472 F. Supp. 2d at 360.  *First,* the Court is satisfied that Plaintiff's claims arise out of Defendant Marte's contacts with New York and support specific jurisdiction because this lawsuit stems from the very transactions that Marte was a part of and derives from Marte's actions within the New York-based cleaning company.

*Second*, the exercise of specific jurisdiction over Marte is reasonable. The factors supporting this conclusion include:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Calif., Solano Cty.*, 480 U.S. 102, 113 (1987)).

The circumstances here demonstrate the reasonableness required for Marte to anticipate being sued in New York for matters relating to and arising from the wages, hours, and policies regarding Plaintiff's employment at Alpha which Marte had significant control over. *See*

14

*Samaroo*, 2025 WL 1446908, at *6 (quoting *Licci*, 763 F.3d at 170) ("It would be unusual, indeed, if a defendant transacted business in New York and the claim arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, the defendant cannot be found to have "purposefully availed itself of the privilege of doing business in the forum and [to have been able to] foresee being haled into court there."). The Court finds the remaining factors to be neutral, and given Marte's default, it has not been provided, nor does it find, any reason why exercise of specific jurisdiction over Marte would be unreasonable. Accordingly, the Court has specific jurisdiction over Marte.

### IV.    Liability

When a defendant defaults, the court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" *Finkel*, 577 F.3d at 84. A defendant's default is considered an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitiongroup, Inc.*, 973 F.2d at 158.

### A.  Statute of Limitations

Before addressing the merits of Plaintiff's claims, the Court must determine if Plaintiff brought his claims in a timely manner. *See Quintero v. Angels of the World, Inc.*, No. 19-cv-6126 (DG), 2021 WL 4464123, at *3 (E.D.N.Y Sep. 10, 2021) (analyzing the statute of limitations to ensure the causes of action were not time barred before delving into the merits of each), *report and recommendation adopted*, 2021 WL 4463488 (E.D.N.Y. Sep. 29, 2021).

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)). "When a defendant defaults, the violation is considered 'willful' and the three-year

15

statute of limitations applies." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *5 (E.D.N.Y. Sept. 29, 2023) (citation omitted). Though the statute of limitations begins when the employee starts his employment, for purposes of establishing the statute of limitations under the FLSA, "a new cause of action accrues with each payday following an allegedly unlawful pay period." *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 277 (E.D.N.Y. 2013).

"Pragmatically speaking, therefore, where willful conduct has been proven, FLSA overtime claims asserted three years prior to commencement of the lawsuit are considered timely." *Bonilla*, 2025 WL 745906, at *6 (citing *Fakir v. Skyrise Rock Corp.*, No. 16-CV-4695 (JPO), 2016 WL 7192095, at *3 (S.D.N.Y. Dec. 12, 2016)) (concluding that some of plaintiff's FLSA claims, which seek redress for conduct beginning as early as May 1, 2010, are untimely as she filed her complaint on June 20, 2016, thus FLSA overtime claims prior to June 20, 2013 were subject to dismissal); *Gunawan v. Sake Sushi Restaurant*, 897 F. Supp. 2d 76, 87 (E.D.N.Y. 2012) (finding, where the complaint was filed on November 16, 2009 and alleged willful conduct under the FLSA, "[plaintiff] may recover on her federal claims for unpaid wages that accrued on or after November 16, 2006.").

Here, Plaintiff commenced this action on February 5, 2025. (ECF No. 1.) Plaintiff was employed by Defendants from March 21, 2018, to December 31, 2018, and from April 25, 2019, to November 27, 2024. (*Id.* at ¶ 38.) Because Defendants have defaulted, their conduct is presumed to be willful for purposes of Plaintiff's FLSA claims, thereby extending the statute of limitations to three years. *Bonilla v. Avery Cuisine LLC*, No. 23-cv-8320 (NJC) (JMW), 2025 WL 559650, at *1 (E.D.N.Y. Feb. 20, 2025) (adopting Report and Recommendation and finding "the R&R correctly found that the statute of limitations for Plaintiffs' FLSA claims is 'extended

16

to three years as Defendant's conduct is presumed to me willful'"). Accordingly, because

Plaintiff filed the Complaint on February 5, 2025, his FLSA claims arising on or after February

5, 2022, are timely whereas Plaintiff's FLSA claims prior to February 5, 2022, are untimely.[5] *Id.*

(concluding "plaintiffs' FLSA claims arising after November 8, 2020 are timely, and claims

prior to November 8, 2020 are untimely" given that the complaint was filed on November 8,

2023).

Conversely, the New York Labor Law ("NYLL") provides for a six-year statute of

limitations for wage-and-hour claims. *See* N.Y. Lab. L. §§ 198(3), 663(3). The limitations period

begins to run when the employee performs the work for which he was allegedly underpaid.

*See Rodriguez v. Queens Convenience Deli Corp.*, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18,

2011). Because Plaintiff commenced this action on February 5, 2025, his NYLL claims arising

on or after February 5, 2019 are timely. Accordingly, all of Plaintiff's NYLL claims during his

second period of employment from April 25, 2019 through November 27, 2024 are timely, while

Plaintiff's claims arising between March 21, 2018 and February 5, 2019 are time-barred. *See*

*Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015) ("As

the Complaint was filed on January 27, 2014, the state law limitations period [under the NYLL]

includes claims dated from January 27, 2008 to January 27, 2014.").

### B. FLSA Overtime Claim

Plaintiffs allege that Defendants failed to pay him overtime wages in excess of forty

hours (40) per workweek that he was statutorily owed under the FLSA. (ECF No. 1 at ¶¶ 49, 60,

69.) To successfully plead an overtime claim under the FLSA, a plaintiff must establish: "(1) the

---

[5] Counsel for Plaintiff effectively concedes this point in the Memorandum of Law. (*See* ECF No. 11-1 at pp. 5-6 ("Accordingly, the FLSA's three-year limitations period—applicable due to Defendants' willful violations—covers Plaintiff's wage claims from February 5, 2022 through November 27, 2024 . . . .")).

employer was an enterprise engaged in commerce or in the production of goods for commerce; (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) that the plaintiff worked in excess of forty (40) hours in a given workweek and did not receive overtime compensation for such work." *Erdemir v. Allstate Marble & Granite, Kitchens & Baths Inc.*, 704 F. Supp. 3d 337, 357 (E.D.N.Y. 2023) (citing 29 U.S.C. §207(a)(1)).

### 1. Whether Defendants were engaged in Commerce or in the Production of Goods for commerce

Employers are subject to FLSA's overtime requirements if the employees are "engaged in commerce or in the production of goods for commerce" or "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). Courts have deemed these two methods as individual coverage and enterprise coverage, respectively. *Erdemir*, 2023 WL 8270891, at *11.

### a. Enterprise Coverage

Enterprise coverage is defined statutorily as when an employer has: (i) employees engaged in commerce or in the production of goods for commerce; and (ii) an annual gross volume of sales greater than $500,000. 29 U.S.C. § 203(s)(1)(A). The burden on plaintiffs to establish enterprise coverage is light. *Oyenuga v. Presidential Sec. Servs. LLC,* No. 22-CV-4972 (DG) (RER), 2023 WL 7687237, at *3 (E.D.N.Y. Sept. 25, 2023) (recognizing enterprise coverage notwithstanding conclusory allegations in the complaint).

Merely parroting statutory language without including specific facts is oftentimes insufficient to meet enterprise coverage. *See Zavada v. Mehbizar, Inc.*, No. 2:23-cv-03682-OEM-ARL, 2024 WL 759351, at *3 (E.D.N.Y. Feb. 24, 2024) ("Plaintiff's barebones invocation of the statutory language under the FLSA does not suffice to plead enterprise coverage under the FLSA."). However, in the context of a default, courts generally do not require additional factual

18

allegations to establish enterprise coverage, and the statutory language may be satisfactory. *Garcia v. 2390 Creston Realty LLC*, No. 22-CV-09172-LGS, 2023 WL 4849889, at *6 (S.D.N.Y. July 28, 2023). Crucially, courts may make logical inferences based on the nature of the business to find that employees engaged in commerce. *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 119 (E.D.N.Y. 2011) (inferring a cleaning enterprise is engaged in commerce to procure cleaning supplies); *see also Fermin*, 93 F. Supp. 3d at 33 (inferring a restaurant engaged in commerce to procure cooking supplies).

Here, the Complaint alleges that Alpha "had and continues to have employees engaged in commerce or in the production of goods or services for commerce, including Plaintiff." (ECF No. 1 ¶¶ 12.) Plaintiff further asserts that Alpha employed workers "who handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce, including Plaintiff." (*Id.* ¶ 13.) In addition, Plaintiff alleges that Alpha had "two (2) or more employees handling goods or materials that have moved in interstate commerce, including Plaintiff." (*Id.* ¶ 65.) Lastly, Plaintiff maintains that he used cleaning supplies in performing his daily job duties. (*See id.* at ¶ 39.)

These allegations are sufficient to show that Plaintiff was engaged in interstate commerce in cleaning services for enterprise coverage purposes. Indeed, "[o]ther cases discussing this element in an FLSA context have held that it is logical to conclude that janitorial/cleaning supplies have moved in interstate commerce." *Almighty Cleaning, Inc.*, 784 F. Supp. 2d at 119 (concluding that it was "logical to infer that the cleaning supplies utilized by the Plaintiffs originated outside of New York"); *Locke v. St. Augustine's Episcopal Church,* 690 F. Supp. 2d 77, 88 (E.D.N.Y. 2010) ("Cleaning products purchased locally have been moved in or produced for commerce, and custodians are employees who handle these products.").

19

Under the second prong to establish enterprise coverage, Plaintiff alleges that Alpha "had an annual gross volume of sales of not less than $500,000 for each applicable year of Plaintiff's employment." (ECF No. 1 at ¶¶ 14, 66.) Ordinarily, though conclusory, such a statement suffices in circumstances akin to here where a cleaning company engaging in interstate commerce grosses over $500,000 in annual revenue by virtue of the enterprise itself. *See Ore v. H&C Cleaning Corp.*, No. 22-CV-20 (AMD) (RER), 2022 WL 19520879, at \*8 (E.D.N.Y. Dec. 14, 2022) (concluding that the allegation that "upon information and belief, the gross annual volume of sales made or business done by H & C Cleaning in 2020 and 2021 was not less than $500,000.00" was sufficient to "meet the pleading requirement for enterprise liability under the FLSA"), *report and recommendation adopted*, 2023 WL 2522814 (E.D.N.Y. Mar. 15, 2023); *McLauglin v. Onanafe Management Solutions LLC*, No. 22-CV-6792 (PKC) (MMH), 2024 WL 4184485, at \*7 (E.D.N.Y. Sept. 14, 2024) (finding plaintiff's assertion that defendant "owned and operated a cleaning business" and "had an annual dollar volume of sales in excess of $500,000.00" sufficient to establish FLSA enterprise coverage because it was reasonable to infer such a figure from the nature of the cleaning supply business), *report and recommendation adopted*, 2024 WL 4355485 (E.D.N.Y. Sept. 30, 2024).  Accordingly, the undersigned recommends finding that Plaintiff has sufficiently established enterprise coverage over Alpha under the FLSA.

### b.  Individual Coverage

Individual coverage is an alternative means by which a plaintiff could establish FLSA coverage, protecting employees based on their own job duties relevant to the employer's business. *See Kim v. J&J Safetymate Corp.*, No. 22-CV-1070 (OEM) (TAM), 2024 WL 734130, at \*4 (E.D.N.Y. Feb. 2, 2024). Individual coverage is implicated where plaintiff demonstrates he

was personally "engaged in commerce or in the production of good for commerce." *Zavada*, 2024 WL 759351 at *3. An employee is engaged in commerce when "a substantial part of [an] employee's work [is] related to interstate commerce." *Id.* Commerce is known as the "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). As such, employees are "engaged in commerce within the meaning of the [FLSA] when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles and including information and intelligence) among the several States or between any State and any place outside thereof". *Santacruz v. Blok Chocolatier LLC*, No. 19-CV-544-EK-SJB, 2021 WL 4341103, at *3 (E.D.N.Y. June 23, 2021) (internal quotations omitted). Employment activities that "simply affect or indirectly relate to interstate commerce" are insufficient to establish individual coverage. *Zavada*, 2024 WL 759351 at *3.

Here, Plaintiff provides no nexus between his employment and interstate commerce, nor does Plaintiff make allegations to demonstrate he engaged in the production of goods to establish individual coverage. The Complaint alleges that Plaintiff was a cleaner and, as an employee of Defendants, handled, sold, and otherwise worked on goods that have been moved in or produced for interstate commerce. (ECF No. 1 at ¶¶ 13, 39.) These conclusory allegations do not indicate an interstate component to Plaintiff's work. *See Santacruz,* 2021 WL 4341103, at *4 ("As a basic rule, if the plaintiff did not have any contact with out-of-state customers or businesses, he cannot be individually covered under the FLSA.") (internal citations omitted); *see also Zavada*, 2024 WL 759351, at *3 (concluding plaintiff failed to plead individual coverage under the FLSA as though it prepared and cooked food that may have traveled through interstate commerce, plaintiff's work itself did not involve an interstate component). In addition, Plaintiff's declaration

21

does not contain further facts to support the allegations made in the Complaint. Rather, he simply states that he "worked for Defendants at their cleaning business as a cleaner." (ECF No. 11-7 at ¶ 11.) For these reasons, the undersigned recommends finding that individual coverage has not been established.

### 2.    The Employer-Employee Relationship under the FLSA

Where coverage as to the enterprise or individual is established, the Court next analyzes whether Plaintiffs have established an employer-employee relationship under the FLSA. To hold a defendant accountable, a plaintiff must also establish an employee-employer relationship between the parties. *See Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH) (SJB), 2019 WL 8381264, at *6 (E.D.N.Y. Dec. 9, 2019). "Employee" is broadly defined under the FLSA as any "individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA defines an employer as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Employ" is defined as to "suffer or permit to work." 29 U.S.C. § 203(g). Pleadings that allege employee status are sufficient to qualify as an employee under the FLSA. *Cao v. Flushing Paris Wedding LLC*, 727 F. Supp. 3d 239, 273 (E.D.N.Y. 2024) (noting a plaintiff satisfies the definition when he alleges that the "defendants employed them in various positions within this statutory meaning").

The Second Circuit has provided that the employer-employee inquiry should be grounded in "economic reality rather than technical concepts." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). "To determine whether an employee-employer relationship exists under the FLSA, courts within the Second Circuit consider: '(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4)

22

the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.'" *Schwartz v. Qazi*, No. 24-cv-00911 (JMW), 2026 WL 63323, at *2 (E.D.N.Y. Jan. 8, 2026) (quoting *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 305 (E.D.N.Y. 2009)). None of these factors are dispositive but courts must look at the "totality of the circumstances" when applying this test. *See Erdemir*, 704 F. Supp. 3d at 358. When determining whether these control factors have been established, courts may analyze the complaint and plaintiff's declarations. *See Thompson v. Hyun Suk Park*, No. 18-cv-6 (AMD)(ST), 2019 WL 1299194, at *3 (E.D.N.Y. Mar. 5, 2019), *report and recommendation adopted*, 2019 WL 1298563 (E.D.N.Y. Mar. 20, 2019).

Here, Plaintiff alleges that he was employed by Defendants and therefore qualifies as an employee under the FLSA. (ECF No. 1 at ¶¶ 32, 37-38.) Moreover, Plaintiff contends that Alpha "maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other employment practices." (*Id.* at ¶ 15.) In addition, Plaintiff maintains that Marte "participated in running the daily operations" at Alpha. (*Id.* at ¶ 10; ECF No. 11-7, Marenco Decl. at ¶¶ 9, 35.) Particularly, Marte participated in the decision to hire and fire Plaintiff, decided and supervised Plaintiff's job duties and responsibilities, decided the manner of Plaintiff's pay, decided Plaintiff's hourly rate, and decided Plaintiff's work schedule. (ECF No. 1 at ¶¶ 22-30; ECF No. 11-7, Marenco Decl. at ¶¶ 25-34.) Indeed, Plaintiff posits that Marte exercised "operational control over Alpha Waste, controlled significant business functions of Alpha Waste, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of Alpha Waste in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including Plaintiff." (ECF No. 1 at ¶ 20.)

Further, the FLSA contains numerous exemptions for certain employees. *See* U.S.C. 29 § 213 (explaining exemptions to coverage by the statute). Some of those exempted from the FLSA include "bona fide 'professional' employees, a group that includes employees compensated on a salary basis at a rate of not less than $455.00 per week and whose primary duties require advanced knowledge in a field of science or learning." *Ghosh v. Neurological Servs. of Queens*, No. 13-CV-1113 (ILG) (CLP), 2015 WL 431807, at *3 (E.D.N.Y. Feb. 3, 2015). Exemption under the FLSA is an affirmative defense and the employer has the burden of proving the employee's exemption by a preponderance of the evidence. *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 54 (2025). Because Defendants have defaulted, this affirmative defense is deemed waived. *Id.* Moreover, none of the exemptions apply to Plaintiff. *McLaughlin*, 2024 WL 4184485, at *8 (concluding that providers of cleaning and janitorial services are "not exempt from the FLSA"); *Ore*, 2022 WL 19520879, at *9 (determining that the statutory exemptions under the FLSA did not apply to plaintiffs who were cleaners and manual laborers).

Accordingly, the undersigned recommends finding that Plaintiff has established an employer-employee relationship under the FLSA.

### 3.  Whether Plaintiff Was Compensated for Work Performed in Excess of Forty Hours

If the District Judge agrees with the undersigned and finds that Plaintiff has made a sufficient showing that the employment is covered under the FLSA, the Court next analyzes the merits of the Plaintiff's FLSA overtime claims. Under the FLSA, to plead a plausible overtime claim, "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

24

Here, Plaintiff claims he is owed $118,166.50 as a result of Defendants' failure to pay him for a total of 320 weeks in overtime wages. (*See* ECF No. 11-8 at p. 1.) Specifically, Plaintiff asserts that he frequently worked from Monday through Saturday from 6:30 p.m. to 8:00 a.m. each week, occasionally working longer if needed. (ECF No. 1 at ¶¶ 41-42.) Plaintiff maintains that he worked ninety-three hours per week. (*Id.* at ¶ 43.) As such, Plaintiff states that he is entitled to over $118,000.00 in overtime damages as a result of Defendants' failure to adequately pay him for this time. (*See id.* at ¶ 49.) Accepting Plaintiffs allegations as true, as the Court must do on a motion for default judgment, *see Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015), the Court recommends finding that Plaintiff established that Defendants failed to pay him his statutorily owed overtime wages. *Bonilla*, 2025 WL 745906, at *11.

### C. NYLL Claims

Because the Court recommends a finding of Defendants' liability under the FLSA, the undersigned will explore the merits of Plaintiff's NYLL claims to determine whether an exercise of supplemental jurisdiction over the state claims is appropriate. Here, Plaintiff seeks to hold Defendants liable under the NYLL for unpaid overtime wages, failure to pay minimum wages and for Defendants' failure to provide wage notices and wage statements and failure to pay spread of hours compensation. (*See generally* ECF No. 1.)

"New York's Labor Law is the state analogue to the federal FLSA." *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011). However, the NYLL "does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Garcia v. Badyna*, No. 12-cv-4021 (RPM) (CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Similarly, a plaintiff need not show that defendants engaged in interstate

25

commerce to recover under the NYLL. *See Ethelbert v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015). To recover under the NYLL, a plaintiff must prove "that he was an employee and that Defendants were employer[s] as defined by the statute and accompanying regulations." *Id.* (citing NYLL § 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2). The NYLL defines an employer as any "individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer." NYLL § 651(6). An employee is one who is "employed for hire by an employer in any employment." NYLL § 190(2). Further, the test for the employer-employee relationship is based on the same factors as that under the FLSA. *Miranda v. Astoria Provisions, LLC*, No. 19-CV-02923 (EK) (PK), 2020 WL 6370058, at *5 (E.D.N.Y. July 24, 2020).

Here, Plaintiff is entitled to coverage under the NYLL. Even if it is determined that Plaintiff failed to meet the statutory requirements of enterprise or individual coverage under the FLSA, he established the employment relationship under the NYLL by identifying Defendants' control over the daily operations of Alpha. Indeed, the NYLL does not require Plaintiff to establish whether the relationship (i) entailed interstate commerce or (ii) involved a defendant that made over $500,000 in annual sales. Therefore, the NYLL applies here.[6]

### 1. *Unpaid Overtime Wages*

To successfully plead an overtime claim under the NYLL, the plaintiffs "must allege only that [they] worked compensable overtime in a workweek longer than forty hours, and that [they] were] not properly compensated for that overtime." *Tackie v. Keff Enter., Inc.*, No. 14-cv-2074 (JPO), 2014 WL 4626229, at *3 (S.D.N.Y. Sept. 16, 2014).

---

[6] If the District Judge decides that Plaintiff's FLSA claim falls short of a successful claim and subsequently declines to exercise supplemental jurisdiction over the state claims, the Court recommends that the Complaint be dismissed without prejudice and with leave to renew to cure any deficiencies.

Plaintiff, through the Complaint, alleges that during his employment, he worked approximately six days a week, Monday through Saturday, working from 6:30 p.m. to 8:00 a.m. (*See* ECF No. 1 at ¶¶ 40-41.) He worked a total of ninety-three hours per week. (*Id.* at ¶ 43.) During his employment, Defendants paid Plaintiff by the day, specifically, Defendants paid Plaintiff $150 per day from 2018 to 2021, Defendants paid Plaintiff $180.00 per day from 2021 to October 2023, and Defendants paid Plaintiff $230.00 per day from October 2023 to November 27, 2024. (*Id.* at ¶¶ 45-47.) These assertions are sufficient for Plaintiff to receive damages for lack of overtime compensation under the NYLL. *See Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028-NGG-SJB, 2018 WL 1770660, at *7–8 (E.D.N.Y. Feb. 6, 2018) (finding plaintiff sufficiently pled an overtime claim under NYLL where he demonstrated through his complaint the amount of hours worked in excess of forty hours).

### 2. *Failure to Pay Minimum Wages*

New York regulations provide that the "regular rate of pay" for employees working in restaurants is calculated by "dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lessor of 40 hours or the actual number of hours worked by that employee during the work week." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5(a)-(b).

Here, Plaintiff contends that Defendants paid Plaintiff less than the New York statutory minimum wage rate. (ECF No. 1 at ¶¶ 48, 84.) Indeed, Plaintiff avers that he worked ninety-three hours over six days a week for a total of 15.5 hours per day (93 divided by 6). (*Id.* at ¶ 43.) Plaintiff was paid $150 per day from his hours worked from 2018 to 2021, $180.00 per day from 2021 to October 2023, and $230.00 per day from October 2023 to November 27, 2024. (*Id.* at ¶¶ 43-47.) Under this Court's calculation, Plaintiff maintained an hourly rate of $9.68 per hour from 2018 to 2021 ($150 per week divided by 15.5 hours), $11.61 per hour from 2021 to October

2023 ($180 per week divided by 15.5 hours), and $14.84 per hour from October 2023 to November 27, 2024 ($230 per week divided by 15.5 hours).

These hourly rates are lower than the applicable minimum wage rate for employees working in Mineola (Nassau County) from 2018 to 2024. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1 (establishing the basic minimum hourly rates for Nassau County employees). Specifically, the minimum wage ranged from $11 to $14 per hour for 2018 to 2021, from $14 to $15 per hour for 2021 to October 2023, and $16 per hour from October 2023 to November 27, 2024). Accordingly, Plaintiff has established a valid NYLL claim for failure to pay minimum wages.

### 3. *Wage Notice and Wage Statement Claims*

Plaintiff brings claims under the NYLL alleging that Defendants failed to furnish accurate wage statements for each of his pay periods as required under as required under NYLL § 195(3), along with Defendants' failure to provide him with a wage notice upon his hire as required under NYLL § 195(1). (ECF No. 1 at ¶¶ 51-53, 56, 89-90, 93-94.)

Under the NYLL's notice and wage statement provisions, employers are statutorily required to provide each employee with notice of their rate of pay and a wage statement listing specific information with each paycheck. N.Y. Lab. L. §§ 195(1)(a), 195(3). The notice must contain "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other." *Id.* § 195(1)(a). Further, the employer must also "obtain from the employee a signed and dated written acknowledgment, in English and in the primary language of the employee, of receipt of this notice." *Id.* The wage statements must include "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour,

28

shift, day, week, salary, piece, commission, or other; gross wages; deductions." *Id.* § 195(3). An employer who fails to provide notices and statements is liable for statutory damages. *See id.* § 198(1-b), (1-d).

Recently, the Supreme Court rejected "the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 596 U.S. 413, 426 (2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Article III standing must be satisfied in order to comply with *TransUnion.* "The requirements of Article III standing are well established: '[A] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (quoting *Spokeo, Inc.*, 578 U.S. at 338). At the default judgment stage, as at the motion to dismiss stage, "the plaintiff still bears the burden of alleging facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (citation omitted).

The Second Circuit has held that "a plaintiff cannot rely on technical violations of the Labor Law" to establish standing. *Guthrie v. Rainbow Fencing*, 113 F.4th 300, 305 (2d Cir. 2024). "A plaintiff may establish standing, however, by establishing 'some causal connection between the lack of accurate notices and [a] downstream harm.'" *Cinar v. R&G Brenner Income Tax, LLC*, No. 20-CV-1362, 2024 WL 4224046, at *3 (E.D.N.Y. Sept. 18, 2024) (quoting *Guthrie*, 113 F.4th at 305). Indeed, when the "gravamen of the complaint is that the denial of plaintiff's statutory right to these documents caused plaintiff to fail to realize that defendants were deducting certain benefits from his wages, resulting in his underpayment," courts have

29

found this demonstrates "a tangible injury resulting from the violation" thus sufficient for Article III standing. *Stih v. Rockaway Farmers Mkt., Inc.*, No. 22-CV-3228 (ARR)(RER), 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3, 2023)

> Further, as *Guthrie* makes clear:

> The legislature may have intended to empower employees to advocate for themselves, but unless the plaintiff-employee can show that he or she would have undertaken such advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195.

*Id.* at 308.

Here, Plaintiff has adequately pled that he suffered an injury in fact sufficient to satisfy the standing requirement. Namely, Plaintiff alleges that "Defendants did not provide [Plaintiff] with a complete and accurate wage notice [or paystubs] when he was hired, or at any time thereafter as required by NYLL § 195(1) [(3)]." (ECF No. 1 at ¶¶ 51-53.) Plaintiff further contends that Defendant "willfully failed to furnish Plaintiffs with wage notices" and "wage statements" and that Defendant violated the NYLL "[t]hrough its knowing and intentional failure[.]" (*Id.* at ¶¶ 84, 89, 90, 93.) "Had Defendants provided such wage notices and statements," Plaintiff avers that he "would have been more likely to know that he was entitled to overtime compensation" for what he worked and "could have advocated for himself" earlier. (*Id.* at ¶ 54.) Consequently, Plaintiff avers that he was "kept in the dark" about "how much he should have been paid," thus unable to rectify his situation earlier by bringing the current lawsuit and, as such, has been continuously underpaid and has incurred "tangible, downstream harm." (*See id.* at ¶¶ 53-56.)

Courts in this District have found these allegations to be sufficient for conferring Article III standing upon a plaintiff claiming defendants failed to provide accurate wage notice and wage

30

statement claims. *See, e.g., Reyes v. Crystal Window & Door Sys., Ltd.*, No. 23-CV-2578 (RPK) (JRC), 2024 WL 4028308, at *4 (E.D.N.Y. Sept. 3, 2024) (concluding plaintiff satisfied Article III standing after pleading "that (1) their notices listed an inaccurate overtime rate and pay frequency; (2) as a result, they were kept in the dark about how much and how often they should be paid; (3) they suffered harms in the form of under- and late payments; and (4) had they received the proper disclosures, they would have advocated for themselves and 'acted to rectify the situation' sooner"); *Cinar*, 2024 WL 4224046, at *4 (finding Article III standing satisfied because plaintiff alleged that because of the inaccurate wage notices and statements, plaintiff "did not realize they were misclassified as exempt employees and thus underpaid," and that had they received accurate information, they "would have confronted Defendants and advocated for the proper payment of wages"); *Stih*, 2023 WL 2760492, at *7 (determining plaintiff had standing to bring the wage notice and wage statements claims because he alleged that defendant's failure to provide a proper wage notice injured plaintiff by "denying him the right to be adequately apprised of the terms and conditions of his employment"); *Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22 CV 6136 (RPK) (RML), 2023 WL 5152336, at *6 (E.D.N.Y. July 18, 2023) (holding plaintiff possessed Article III standing where he alleged the breach of defendant's wage statement and notice obligations "injured [plaintiff] by denying [him] the right to know the conditions of [his] compensation, resulting in the underpayment of wages"), *report and recommendation adopted*, 2023 WL 9104384 (E.D.N.Y. Aug. 23, 2023). Plaintiff, therefore, has established it has standing to maintain these causes of action.

Moreover, Plaintiff credibly asserts that he has never received any wage notice or wage statements during his tenure with Defendants as required under the NYLL §§ 195 (1) and (3).

31

(*See* ECF No. 11-7, Marenco Decl. at ¶¶ 23-24.)  As such, the undersigned recommends finding that Plaintiff has established a valid NYLL claim to pay minimum wages.

### 4. *Spread of Hours Pay*

Under New York law, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate . . . for any day in which (a) the spread of hours exceeds 10 hours . . . ." N.Y.C.R.R. § 142-2.4; *Rana v. Islam*, 887 F.3d 118, 123 n.3 (2d Cir. 2018). "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday," and includes "working time plus time off for meals plus intervals off duty." N.Y.C.R.R. § 146-1.6; *Alonso Vazquez v. Azoulay*, 834 F. App'x 653, 654 (2d Cir. 2021). Courts calculate spread of hours damages "by multiplying the number of days an employee worked more than ten hours by the basic minimum wage rate." *Pastuizaca v. Mihwa Jo Corp.*, No. 22-CV-5561 (MKB), 2025 WL 437929, at *9 (E.D.N.Y. Feb. 8, 2025) (citing N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4(a)). Here, during his employment with Defendants, Plaintiff alleges that he worked six days per week and ninety-three hours in total per week—averaging 15.5 hours per week. (ECF No. 1 at ¶¶ 40-41, 43.) As Plaintiff contends, he never received his spread of hours compensation when Plaintiff worked these shifts in excess of ten hours. (*Id.* at ¶¶ 50, 97.) Accordingly, Plaintiff is entitled to spread of hours compensation under the NYLL.

### V.  **Damages**

Once liability for default is established, the next inquiry is damages. A party's default constitutes a concession of all well-pleaded allegations, however such default "is not considered an admission of damages." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

Here, Plaintiff requests the following damages:

- Award compensatory damages, including all unpaid wages owed;

- Award liquidated damages under the NYLL or, in the alternative, the FLSA;

- Award statutory penalties for Defendants' NYLL Section 195 record-keeping violations

- Award interest on all unpaid wages due accruing from the date such amounts were due;

- Award all costs and attorneys' fees incurred in prosecuting this action[7];

- Award an automatic fifteen percent (15%) increase with respect to any damages not paid within the later of ninety days following the issuance of judgment or the expiration of the time to appeal pursuant to the NYLL; and

- Such further relief as the Court deems just and equitable.

(ECF No. 1 at pp. 11-12.)

In total, Plaintiff seeks $527,839.59, a figure comprised of: (i) $72,977.02 of minimum wages owed, (ii) $118,166.50 in unpaid overtime compensation, (iii) $26,766.00 in unpaid spread of hours compensation; (iv) $5,000.00 in total wage notice penalties; (v) $5,000 in wage statement penalties; (vi) $82,020.55 in total interest owed; and (vii) $217,909.52 in total liquidated damages. (ECF No. 11-8; ECF No. 11-1 at p. 34.)

### A. Unpaid Overtime Wages

Here, Plaintiff seeks a damages award under the FLSA and NYLL for unpaid overtime wages of $118,166.50. (*See* ECF No. 11-8 at p. 4.) As noted above, Plaintiff's FLSA claims prior

---

[7] As noted *supra*, in the motion for default judgment, Plaintiff's Counsel stated he is not seeking attorneys' fees and costs. (*See* ECF No. 11-2, Williams Decl. at ¶ 26.)

to February 5, 2022 are untimely just as his NYLL claims prior to February 5, 2019 are untimely. Therefore, the Court narrows its analysis to the post-February 5, 2019 submissions when calculating unpaid overtime owed to Plaintiff.

Doing so demonstrates that Plaintiff worked a total of 292 weeks from April 22, 2019 (the first date of Plaintiff's employment following 2/5/19) to November 24, 2024 and worked a total of 598.5 hours during those weeks. (*See* ECF No. 11-8 at p. 4.) The hours that Plaintiff worked during this window in excess of forty hours per week totaled 318.5 hours. (*See id.*) Separately, Plaintiff's overtime rate (1.5 times Plaintiff's regular rate) during this post February 5, 2019 period should have been: (i) $18.00 (1.5 times $12.00 per hour) for 36 weeks from April 22, 2019 to December 29, 2019; (ii) $19.50 (1.5 times $13.00) for 52 weeks December 30, 2019 to December 27, 2020; (iii) $21.00 (1.5 times $14.00) for 52 weeks from December 28, 2020 to December 26, 2021; (iv) $22.50 (1.5 times $15.00) for 105 weeks from December 27, 2021 to December 31, 2023; and (v) $24.00 (1.5 times $16.00) for 47 weeks from January 1, 2024 to November 24, 2024. (*See id.*)

In short, and as reflected in the following chart, taking the difference between the overtime rate Plaintiff was owed and the minimum wage rate that he should have been paid, multiplying that figure by the number of hours Plaintiff worked in excess of forty hours on a given week, and multiplying that number by the number of weeks worked in a payment period results in the total overtime wage figure of $110,004.50. *See Bonilla*, 2025 WL 745906, at *15 (conducting identical math to arrive at the appropriate overtime wages figure and recognizing such an approach is utilized by courts throughout the Circuit when determining proper overtime wages).

| Payment Period | Minimum Wage Rate ("MWR") | Overtime Rate ("OTR") | Difference Between MWR and OTR | Hours in Excess of 40 Per Week | Weeks Worked | Totals |
|---|---|---|---|---|---|---|
| 4/22/2019 – 4/28/2019 | $12.00/hour | $18.00/hour | $6 | .50 | 1 | $3.00 |
| 4/29/2019 – 12/29/2019 | $12.00/hour | $18.00/hour | $6 | 53 | 35 | $11,130 |
| 12/30/2019 – 12/27/2020 | $13.00/hour | $19.50/hour | $6.50 | 53 | 52 | $17,914 |
| 12/28/2020 – 12/26/2021 | $14.00/hour | $21.00/hour | $7.00 | 53 | 52 | $19,292.00 |
| 12/27/2021 – 12/25/2022 | $15.00/hour | $22.50/hour | $7.50 | 53 | 52 | $20,670.00 |
| 12/26/2022 – 12/31/2023 | $15.00/hour | $22.50/hour | $7.50 | 53 | 53 | $21,067.50 |
| 1/1/2024 – 11/24/2024 | $16.00/hour | $24.00/hour | $8.00 | 53 | 47 | $19,928.00 |
| Total | | | | | | $110,004.50 |

Accordingly, the undersigned recommends awarding Plaintiff $110,004.50 in unpaid overtime wages.

## B. Unpaid Minimum Wages

Plaintiff seeks damages for unpaid minimum wages under the NYLL in the amount of $72,977.02. (ECF No. 11-8 at p. 4.) In order to calculate unpaid minimum wages owed to a plaintiff under the NYLL, courts will "subtract[] the hourly rate paid to Plaintiffs each week from New York's minimum wage rate." *Ore*, 2022 WL 19520879, at *11 (quoting *Almighty Cleaning Co.*, 784 F. Supp. 2d at 126) The difference is "multiplied by ... the number of hours plaintiff worked each week," which is then "multiplied by ... the number of weeks falling within" the relevant pay period. *Id.* (quoting *Peralta v. M & O Iron Works, Inc.*, No. 12-CV-3179 (ARR) (RLM), 2014 WL 988835, at *8 (E.D.N.Y. Mar. 12, 2014)). As noted above, Plaintiff maintained an hourly rate of $9.68 per hour from 2018 to 2021 ($150 per week divided by 15.5 hours),

35

$11.61 per hour from 2021 to October 2023 ($180 per week divided by 15.5 hours), and $14.84 per hour from October 2023 to November 27, 2024 ($230 per week divided by 15.5 hours).

Similar to the overtime calculation, the Court narrows its analysis to Plaintiff's post-February 5, 2019 employment when calculating the unpaid minimum wages he is owed. Based on Plaintiff's submitted hours, his reported wages, and the statutory minimum wage, the amount of unpaid minimum wages Plaintiff is owed under the NYLL is calculated as follows:

| Payment Period | Plaintiff's Hourly Rate ("PHR") | Minimum Wage Rate ("MWR") | Difference Between MWR and PHR | Hours Worked Per Week | Weeks Worked | Totals |
|---|---|---|---|---|---|---|
| 4/22/2019 – 4/28/2019 | $9.68 | $12.00 | $2.32 | 40.50 | 1 | $93.96 |
| 4/29/2019 – 12/29/2019 | $9.68 | $12.00 | $2.32 | 93.00 | 35 | $7,551.60 |
| 12/30/2019 – 01/05/2020 | $9.68 | $12.00 | $2.32 | 13.50 | 1 | $31.32 |
| 12/30/2019 – 01/-05/2020 | $9.68 | $13.00 | $3.32 | 67.50 | 1 | $224.10 |
| 01/06/2020 – 12/27/2020 | $9.68 | $13.00 | $3.32 | 93.00 | 51 | $15,746.76 |
| 12/28/2020 – 01/03/2021 | $9.68 | $13.00 | $3.32 | 66.00 | 1 | $219.12 |
| 12/28/2020 – 01/03/2021 | $9.68 | $14.00 | $4.32 | 27.00 | 1 | $116.64 |
| 01/04/2021 – 12/26/2021 | $11.61 | $14.00 | $2.39 | 93.00 | 51 | $11,335.77 |
| 12/27/2021 – 01/02/2022 | $11.61 | $14.00 | $2.39 | 79.50 | 1 | $190.01 |
| 12/27/2021 – 01/02/2022 | $11.61 | $15.00 | $3.39 | 13.50 | 1 | $45.77 |
| 01/03/2022 – 12/25/2022 | $11.61 | $15.00 | $3.39 | 93.00 | 51 | $16,078.77 |
| 12/26/2022 – 10/01/2023 | $11.61 | $15.00 | $3.39 | 93.00 | 40 | $12,610.80 |
| 10/02/2023 – 12/31/2023 | $14.84 | $15.00 | $0.16 | 93.00 | 13 | $193.44 |
| 01/01/2024 – 11/24/2024 | $14.84 | $16.00 | $1.16 | 93.00 | 47 | $5,070.36 |
| Total | | | | | | $69,508.42 |

Accordingly, the undersigned recommends awarding Plaintiff $69,508.42 in unpaid minimum wages under the NYLL.

## C. **Spread of Hours**

Plaintiff requests unpaid spread of hours compensation in the amount of $26,766.00 (ECF No. 11-8 at p. 3; ECF No. 11-1 at p. 34.) "Pursuant to the NYLL, employees are entitled to an additional hour of pay at the minimum wage rate for each day an employee's spread of hours exceeded ten hours." *Ore*, 2022 WL 19520879, at *12 (citing 12 N.Y.C.C.R. § 142-2.4) *see Fermin*, 93 F. Supp. 3d at 46. Here, Plaintiff alleges that he worked six days per week and ninety-three hours in total per week, thereby averaging 15.5 hours per week. (ECF No. 1 at ¶¶ 40-41, 43.) As Plaintiff contends, he never received his spread of hours compensation when Plaintiff worked these shifts in excess of ten hours. (*Id.* at ¶¶ 50, 97.) Accordingly, Plaintiff is entitled to one extra hour of pay at the then-applicable minimum wage for each day that he worked more than ten hours per day. The Court calculates the spread of hours pay owed to Plaintiff as follows:

| Payment Period | Weeks Worked | Spread of Hours Days Per Week | Applicable Minimum Wage | Spread of Hours Wages Owed (Total) |
|---|---|---|---|---|
| 4/22/2019 – 4/28/2019 | 1 | 1 | $12.00 | $12.00 |
| 4/29/2019 – 12/29/2019 | 35 | 6 | $12.00 | $2,520.00 |
| 12/30/2019 – 12/27/2020 | 52 | 6 | $13.00 | $4,056.00 |
| 12/28/2020 – 12/26/2021 | 52 | 6 | $14.00 | $4,368.00 |
| 12/27/2021 – 12/25/2022 | 52 | 6 | $15.00 | $4,680.00 |
| 12/26/2022 – 12/31/2023 | 53 | 6 | $15.00 | $4,770.00 |
| 01/01/2024 – 11/24/2024 | 47 | 6 | $16.00 | $4,512.00 |
| **Total** | | | | **$24,918** |

37

Accordingly, the undersigned recommends awarding Plaintiff $24,918.00 in unpaid spread of hours wages under the NYLL.

### D.  Liquidated Damages

Under the NYLL, "[e]mployees may recover liquidated damages of 100% of wages owed unless 'the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law.'" *Fermin*, 93 F. Supp. 3d at 47 (internal citation omitted); *see also* N.Y. Lab. L. § 198(1–a). Because the FLSA and NYLL liquidated damages deter the same conduct, the Second Circuit has interpreted the FLSA and NYLL "as not allowing duplicative liquidated damages for the same course of conduct." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). "In light of the principle that 'the law providing the greatest recovery will govern,' [p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA." *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020) (citation omitted).

Here, Plaintiff requests that he be awarded $217,909.52 in liquidated damages "solely under the NYLL" rather than the FLSA as it results in a higher award and greatest relief. (ECF No. 11-1 at p. 30.) This figure represents the sum of the total minimum wages, total overtime compensation owed, and total spread of hours wages owed. Plaintiff is entitled to an award of liquidated damages as Defendants did not comply with the NYLL and failed to demonstrate good faith. Indeed, Defendants' lack of good faith is evidenced through the failure to defend this action, even despite receiving ample notice throughout the course of this litigation. (ECF No. 11); *see Lu Nan Fan v. Jenny & Richard's Inc.*, No. 17-CV-6963 (WFK), 2019 WL 1549033, at *11 (E.D.N.Y. Feb. 22, 2019) ("As a result of defendants' default in this action, the record is devoid of evidence of their good faith or reasonable belief"), *report and recommendation*

*adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019). Plaintiff is therefore entitled to $204,430.92 in liquidated damages under the NYLL—the sum of Defendants' unpaid overtime compensation, unpaid minimum wages, and unpaid spread of hours pay. *Ore*, 2022 WL 19520879, at *12 (awarding plaintiffs "one hundred percent of the minimum wage, overtime, and spread-of-hours damages that they are entitled to under the NYLL" after finding defendants had "no reasonable grounds for believing they were in compliance with the law").

### E.  Defendants' Statutory Violations

Plaintiff seeks $10,000 for statutory damages concerning Defendants' violations pursuant to NYLL §§ 195(1), (3). (ECF No. 11-8 at p. 4.) "Violations of NYLL § 195(1) carry damages of $50 per workday, for a maximum of amount of $5,000." *Rowe v. CC Restaurant & Bakery, Inc.*, No. 17-CV-01423 (CBA) (PK), at *8 (E.D.N.Y. Aug. 15, 2019) (citing NYLL § 198(1-b)). Similarly, "[v]iolations of NYLL § 195(3) carry damages of $250 per workday, for a maximum amount of $5,000." *Id.* As recommended *supra*, Plaintiff has established the requisite liability to recovery. Accordingly, Plaintiff is entitled to the statutory maximum of $5,000 under §§ 195(1), (3), for a total of $10,000. *See Ming Hui v. Shorty's Seafood Corp.*, No. 15-CV-7295 (RJD) (ST), 2017 WL 5054401, at *10 (E.D.N.Y. Sept. 6, 2017).

### F.  Pre-judgment and Post-Judgment Interest

Plaintiff also seeks an award of pre- and post-judgment interest. (ECF No. 11-1 at p. 34.) Pre-judgment interest is not awardable under the FLSA in addition to liquidated damages, yet the NYLL permits an award of both. *Fermin*, 93 F. Supp. 3d at 48. "Plaintiffs may recover pre-judgment interest on claims for unpaid minimum wages, overtime wages, and spread-of-hours damages, but not on liquidated or statutory damages." *Ore*, 2022 WL 19520879, at *13. Indeed, pre-judgment interest is available where "liability is found not only under the NYLL but also

under the FLSA." *Begum v. Ariba Discount, Inc.*, No. 12cv6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (citation omitted). Under the NYLL, an award of pre-judgment interest "shall be at the rate of nine per centum per annum" on the amount of unpaid wages due and owing. N.Y. C.P.L.R. § 5004; *see Zurita v. High Definition Fitness Center, Inc.*, 13 CV 4394 (CBA) (RML), 2016 WL 3636020, at *9 (E.D.N.Y. June 29, 2016).

Courts in the Second Circuit frequently calculate pre-judgment interest from the "midpoint of claims." *Ore*, 2022 WL 19520879, at *13 (citing *Fermin*, 93 F. Supp. 3d at 49). Indeed, where damages were incurred at various times, pre-judgment interest "shall be computed upon each item from the date it was incurred or upon all the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b); *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 386 (E.D.N.Y. June 12, 2013) (finding where "unpaid wages were incurred at various times, . . . [s]imple prejudgment interest is calculated from a singular, midpoint date . . . through the date judgment is entered) (alterations in original) (internal quotations and citation omitted). This midpoint date typically falls "between when plaintiff began and ceased working for defendants." *Ore*, 2022 WL 19520879, at *13 (citations omitted). "Courts have 'wide discretion in determining a reasonable date from which to award pre-judgment interest.'" *Pazderova v. Drzewiecki*, No. 23-CV-1617 (LDH) (LKW), 2025 WL 3460931, at *16 (E.D.N.Y. Feb. 14, 2025) (quoting *Conway v. Icabn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)).

Here, Plaintiff avers that pre-judgment interest should be awarded under the NYLL. (*See* ECF No. 11-1 at p. 31.) Defendants failed to pay Plaintiff his overtime, minimum wages, and spread of hours pay during his employment which first began on March 21, 2018 and eventually concluded on November 27, 2024. (ECF No. 1 at ¶ 38.) The midpoint between these two dates of Plaintiff's employment is June 24, 2021. Accordingly, the undersigned recommends that Plaintiff

be awarded an actual damages award of $203,710.92 for the unpaid overtime ($110,004.50), minimum wage ($69,508.42), and spread of hours compensation ($24,198.00), plus prejudgment interest on that amount calculated at 9% from June 24, 2021 to date Judgment is entered.

Further, U.S.C. § 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." *See Duffy v. Oyster Bay Indus., Inc.*, No. 10-CV-3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), *report and recommendation adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011). Here, having found that Plaintiff established liability under his FLSA and NYLL claims, and would be entitled to overtime, minimum wage, spread of hours, and liquidated damages, the undersigned recommends a finding that Plaintiff is also entitled to post-judgment interest from the date the Clerk of Court enters judgment until the date of payment.

### G.  Should There Be a Fifteen Percent Increase in Interest?

Lastly, Plaintiff argues that he is entitled to an automatic fifteen percent (15%) increase for any unpaid damages within the later of ninety days following either a judgment being entered or the time to appeal the judgment expires pursuant to NYLL § 198. (ECF No. 11-1 at p. 32); *see* NYLL § 198(4) ("[A]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."). Such an award is "mandatory" and the "increase applies only to damages awarded under state law." *Sanchez v. Hyper Structure Corp.*, No. 19-CV-04524 (KAM) (PK), 2023 WL

41

2815717, at *11-12 (E.D.N.Y. Feb. 24, 2023). As such, should Defendants fail to pay any unpaid amount of the judgment ninety days after the judgment has been issued, the undersigned recommends a finding that the amount be subject to a fifteen percent increase penalty, as set forth in NYLL § 198(4).

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Plaintiff's motion for default judgment (ECF No. 11) be **GRANTED**, and that the Court enter judgment against Defendants in the following amounts: (i) **$110,004.50** in unpaid overtime wages; (ii) **$69,508.42** in unpaid minimum wages; (iii) **$24,198.00** in unpaid spread of hours compensation; (iv) **$204,430.92** in liquidated damages under the NYLL; (v) **$10,000.00** in statutory violations pursuant to NYLL §§ 191(1), (3); (vi) prejudgment interest on $203,710.92 for the unpaid overtime wages, unpaid minimum wage, and unpaid spread of hours compensation ($24,198.00), calculated at 9% from June 24, 2021 to date Judgment is entered; and (vii) post-judgment interest from the date the Clerk of Court enters judgment until the date of payment. Should Defendants fail to pay any unpaid amount of the judgment ninety days after the judgment has been issued, the undersigned recommends a finding that the amount be subject to a fifteen percent increase penalty, as set forth in NYLL § 198(4).

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served through ECF on all counsel. Counsel for Plaintiff is directed to serve copies of this Report and Recommendation upon Defendant on or before April 24, 2026, and file proof of service of the same ECF. Any written objections to this Report and Recommendation must be filed within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. 2011); Fed. R.

Civ. P. 6(a), 72(b); *see also Nambiar v. The Central Orthopedic Group LLP*, No. 24-1103 (2d Cir. Oct. 28, 2025) (addressing timing and scope of objections to Reports and Recommendations). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days precludes further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated: Central Islip, New York.
      April 20, 2026

**RESPECTFULLY RECOMMENDED**,
/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

43